# United States District Court
## for the Northern District of Oklahoma

Case No. 21-cv-103-JDR-MTS

International Brotherhood of Electrical Workers Local Union No. 584,

*Plaintiff,*

*versus*

Brent Electric Company, Inc.,

*Defendant.*

## OPINION AND ORDER

Plaintiff International Brotherhood of Electrical Workers Local Union No. 584 sued to enforce an arbitration award against Defendant Brent Electric Company, Inc. *See* Dkt. 2. The Company filed counterclaims against the Union, which the Union moved to dismiss. *See* Dkts. 17, 23. After briefing on the Union's motion was complete, the Union notified the Court of a decision in a parallel proceeding that the Union claims should be given preclusive effect. Dkt. 35. *See Brent Elec. Co. v. Int'l Bhd. of Elec. Workers Loc. Union*, No. 4:21-cv-00246-CRK-CDL, 2023 WL 5750484, at *2 (N.D. Okla. Sept. 6, 2023) (hereinafter *Brent Electric I*). The decision in *Brent Electric I* is a final judgment. *Id. See Brent Elec. Co., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 584*, 110 F.4th 1196, 1203 (10th Cir. 2024), *cert denied*, ___ S. Ct. ___, No. 24-511, 2025 WL 581604 (Feb. 24, 2025). The parties supplemented the briefing to address the effect of *Brent Electric I* on this case. After reviewing the original and supplemental briefing, as well as the opinions in *Brent Electric I*, the Court grants the Union's motion with respect to Count I. The Court denies the remainder of the Union's motion.

Case No. 21-cv-103

I

The International Brotherhood of Electrical Workers Local Union No. 584 is a labor organization representing electrical construction workers in Tulsa, Oklahoma, for collective bargaining purposes. Dkt. 2 at ¶ 3. Brent Electric Company is an electrical contractor that, from 1996 until September 18, 2018, was represented by the National Electrical Contractors Association in collective bargaining negotiations. Dkt. 17 at ¶¶ 6-15. While represented by NECA, the Company entered into two separate agreements with the Union: The first, a Collective Bargaining Agreement between the Union and NECA, was executed by NECA on behalf of those it represented (including the Company) on June 1, 2018. Dkt. 17-2. The second, entitled "Addendum Four Memorandum of Understanding," was executed by NECA on behalf of those it represented, the Union, and third-party contractor OESCO on May 30, 2012. Addendum Four was modified by agreement on June 1, 2018. Dkt. 17 at ¶¶ 16-17; Dkt. 17-5.

The parties' dispute concerns the interplay (or lack thereof) between the CBA and Addendum Four. The Union claims that Sections 6.01 through 6.05 of the CBA require the Company to make regular monthly contributions to both a pension plan and a Joint Apprenticeship and Training Committee Fund. Dkt. 2 at ¶ 6. The Company, however, alleges that its obligations to contribute to the pension plan are governed not only by the CBA, but also Addendum Four. According to the Company, Addendum Four modified the amount it is required to contribute to the JATC Fund and authorized the Company to stop contributing to the pension plan once that plan became fully funded. Dkt. 17 at ¶¶ 17, 23-33; Dkt. 17-5 (indicating that, when the pension fund is fully funded, an employer may "elect to terminate its obligation to contribute" to the fund and instead make contributions to a profit-sharing plan).

The Company claims that the pension plan was fully funded as of January 1, 2020, and that it appropriately exercised its rights under Addendum

Four to cease contributing to that plan effective December 2020. Dkt. 17 at ¶¶ 32-36. Beginning on January 10, 2021, the Company began making regular monthly contributions to the Union's profit-sharing plan and the JATC fund rather than the pension plan. *Id.* at ¶¶ 38-39. These funds were never deposited, however, because the third-party administrator responsible for the Union's pension and welfare funds, Southwest Service Administrators, refused to designate the payments as directed. *Id.* at ¶¶ 39-50. Instead, Southwest returned the Company's payments made in January, February, and March 2021. *Id.* On March 18, 2021, Southwest informed the Company that it was delinquent in its contributions to the pension plan and threatened a collection action to recover the amount past due, fees, and costs. *Id.* at ¶ 50. The Company, under protest, redirected its payments to the pension plan. *Id.* at ¶¶ 51-55.

While Southwest's dispute with the Company was ongoing, the Union initiated grievance proceedings under Sections 1.05 through 1.10 of the CBA, alleging that the Company violated the CBA by refusing to make payments to the pension plan. Dkt. 2 at ¶¶ 5-8. An arbitration panel reviewed the grievance. *Id.* at ¶ 9. After an evidentiary hearing, the panel concluded that the Company violated the CBA. The panel instructed the Company to correct its past contributions and modify its subsequent payments. Dkt. 17-20.

When the Company did not change its contributions in accordance with the arbitration panel's ruling, the Union filed this lawsuit alleging that the panel's decision should be confirmed and enforced under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Dkt. 2 at ¶¶ 12-13. The Company filed a counterclaim alleging that the arbitration award should be vacated because Addendum Four is a separate and distinct contract apart from the CBA and is not subject to arbitration (Count I); the panel lacked jurisdiction to address the Union's untimely grievance (Count II); and the

---

[1] Because the parties' claims raise questions of federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

panel exceeded its authority by entering an award that fails to draw its essence from the CBA (Count III). *See generally* Dkt. 17. The counterclaim also seeks a judicial declaration that the Company is in full compliance with Addendum Four, and that all future payments should be made to the profit-sharing plan and the JATC fund, rather than the pension plan (Count V).[2] *Id.*

## II

The Union argues that all four claims are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "When reviewing motions to dismiss, '[t]he question is whether, [taking] the allegations [as] true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.'" *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 186 (10th Cir. 2025) (alterations in original) (quoting *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009)). In general, a court may consider the pleadings and any documents attached to them when reviewing a motion to dismiss. *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). *See Bell v. Fur Breeders Agric. Co-op.*, 348 F.3d 1224, 1230 (10th Cir. 2003). A pleading should not be dismissed unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell*, 348 F.3d at 1230 (citation and quotation marks omitted).

## III

In Count I, the Company claims that the arbitration panel lacked authority to resolve the parties' dispute regarding contributions to the pension plan because those contributions are governed by Addendum Four, which is not part of the CBA. Dkt. 17 at 16-17. The Company asks this Court to hold as a matter of law that the arbitration panel exceeded its authority by addressing a dispute that was not subject to the CBA's dispute resolution procedures.

---

[2] There is no Count IV set forth in the counterclaim. For ease of reference, the Court adopts the numbering system used by the Company.

Case No. 21-cv-103

*Id.* The Union argues that this claim should be dismissed because the plain and unambiguous language of the parties' agreements establishes that Addendum Four is part of the CBA, and the panel acted within its authority when it resolved the parties' disputes in accordance with the CBA's grievance procedures.

The parties' dispute is not a novel one: In *Brent Electric I*, the Union sought judicial confirmation of a different arbitration award that imposed a collective bargaining agreement on the parties when they were unable to agree on a successor to the 2018 CBA. *Brent Electric I*, 2023 WL 5750484, at *2. The Company moved for summary judgment, asserting that Addendum Four was "separate and distinct from the 2018 CBA." *Id.* at *2, n.4. The Union disputed that factual assertion. *Id.* When the Company failed to submit a reply disputing the Union's position, the court, pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure, determined that the "2018 CBA included Addendum Four Memorandum of Understanding." *Id.* at *2.[3] Based on this and other findings, the court denied the Company's motion for summary judgment and granted the Union's motion in part, confirming the arbitration award. *Id.* at *11. On appeal, the Company maintained its position that Addendum Four was a separate agreement. *Brent Electric Co., Inc.*, 110 F. 4th at 1204, 1204 n.3. The Court of Appeals for the Tenth Circuit affirmed the district court's ruling without modifying the district court's conclusion that Addendum Four was part of the 2018 CBA. *Id.* at 1204, 1229. The appellate court's decision is now final. *See Brent Electric Co.*, 2025 WL 581604.

The Parties disagree on the effect of *Brent Electric I* on Count 1.[4] The Union contends that *Brent Electric I* decided that Addendum Four is part of

---

[3] *See also Brent Electric I*, 2023 WL 5750484, at *2 (concluding that the "2018 CBA included [the] Memorandum of Understanding . . . which involves NECA, the Union, and the Oklahoma Electrical Supply Company . . . [and] was initially executed on May 30, 2012, and renewed on June 1, 2018" (citation and footnote omitted)).

[4] The Company suggests that the ruling in *Brent Electric I* is immaterial to this case, because the Union waived its right to assert the defense of issue preclusion. *See* Dkt. 58 at

5

Case No. 21-cv-103

the CBA and that this Court is precluded from reconsidering that question. *See* Dkt. 57 at 11-13. The Company, however, argues that the prior decision "improperly relied on" Rule 56(e)(2) of the Federal Rules of Civil Procedure, and that the decision has "no preclusive effect on the issues before the Court in the present case." Dkt. 58 at 1-2.

"Res judicata doctrine encompasses two distinct barriers to repeat litigation: claim preclusion and issue preclusion." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1135 (10th Cir. 2004). Claim preclusion, prevents "parties or their privies from relitigating issues that were or could have been raised" in a prior action that was finally resolved on its merits. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).[5] Issue preclusion, in contrast, "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res.*, 378 F.3d at 1136.

Issue preclusion applies if the following four requirements are satisfied: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom

---

7. The Court disagrees. The Union notified this Court of the order dismissing the Company's claims in *Brent Electric I* and argued that the finding in that case should be given preclusive effect. *See* Dkts. 35, 44. The question of the preclusive effect of *Brent Electric I* was therefore raised by the Union (albeit prematurely due to the preliminary character of the dismissal). Furthermore, waiver binds only parties, not courts. This Court may raise the matter of preclusion sua sponte in appropriate circumstances, such as when the Court is aware a of prior matter addressing the issue before it. *See Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1270 (10th Cir. 2022).

[5] This doctrine is distinct from issue preclusion, in that the doctrine of claim preclusion generally applies only where "there is an identity of parties and of claims and a final judgment on the merits," while issue preclusion does not require that the parties be identical. *SIL-FLO*, 917 F.2d at 1520.

Case No. 21-cv-103

the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683, 687 (10th Cir. 1992)). All four requirements are met in this case.

First, this case involves an issue identical to the one resolved in *Brent Electric I*. In that case, the Company argued that the CBA and Addendum Four were separate, independent agreements, and that the arbitration panel created a new contract "out of thin air" when it ordered the Company to be bound by not only a revised CBA but also a revised Addendum Four. *Brent Electric I*, Case No. 4:21-CV-00246, Dkt. 68 at 24-27; Dkt. 78 at 5, 8-9. In making that argument, the Company asked the court to address the same question presented here—whether Addendum Four is a component of, rather than separate from, the 2018 CBA. The court resolved that question against the Company. *Brent Electric I*, 2023 WL 5750484, at *2.

In arguing otherwise, the Company relies on an overly broad characterization of both this case and *Brent Electric I*. The Company contends that *Brent Electric I* addressed the question of whether a first arbitration panel improperly imposed permissive subjects of bargaining on the Company (including an updated Addendum Four), while this case concerns the separate question of whether a different arbitration panel's ruling is enforceable under the 2018 CBA. Dkt. 58 at 5. Although the Company is correct that the *ultimate questions* presented in the two cases are different, it is nevertheless true that both cases require a determination of the same *underlying question*: whether Addendum Four is part of the 2018 CBA. Because that question was raised and addressed both here and in *Brent Electric I*, the identity-of-issues requirement is satisfied. *Park Lake Res.*, 378 F.3d at 1136. *See* 18 James Wm. Moore et al., Moore's Federal Practice § 132.02[2][c] (3d ed. 2010) ("If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that

new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged.").

The second element necessary to establish estoppel—a final judgment on the merits—is also present here. The final judgment requirement is satisfied if the issue to be precluded was "actually litigated and determined" by a final judgment and "the determination [was] essential to the judgment." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)) (internal citation and quotation marks omitted). There is no question that judgment in *Brent Electric I* is final.[6] But the Company contends that the court's statement "that Addendum Four was part of the 2018 CBA" was mere dicta, was not essential to the court's decision, and should not be given preclusive effect. Dkt. 58 at 6. In support of this argument, the Company notes that the court "d[id] not reach the substance" of the terms of Addendum Four. *Id.* at 6-7 (emphasis removed) (citation and quotation marks omitted).

The Court disagrees with the Company. In *Brent Electric I*, the court considered whether the arbitration panel acted within its power when it imposed a successor to the 2018 CBA (including a successor to Addendum Four) on the parties. *Brent Electric I*, 2023 WL 5750484, at *5. The Company argued that the panel had no authority to force it into a new collective bargaining agreement that included a new "freestanding" Addendum Four with the Union and NECA. But the district court expressly rejected this argument, concluding that the Company had agreed to arbitrate any disputes "that result[ed] from the negotiation of a successor agreement to the 2018 CBA," and that this agreement extended to the renewal of Addendum Four, which "was included in" that CBA. *Id.* at *5, *10. The court's conclusion that Addendum Four was "included in the 2018 CBA" was essential to its holding that the

---

[6] *See Brent Electric I*, Case No. 4:21-CV-00246, Dkt. Nos. 80, 81, 95, 98 (order, judgment, decision affirming district court, and notice of denial of petition); *Brent Elec. Co., Inc.*, 110 F.4th 1196, *cert denied*, ___ S. Ct. ___, No. 24-511, 2025 WL 581604 (Feb. 24, 2025).

Case No. 21-cv-103

arbitration panel acted within its authority when it imposed a new agreement incorporating Addendum Four on the Company. *Id.* Indeed, the Company has not explained, and the Court cannot identify, any way that the court could have reached its decision without first holding that Addendum Four was "included in" the 2018 CBA. The issue of Addendum Four's incorporation in the CBA was essential to, and actively litigated in, the now-final prior case, and the second estoppel requirement is satisfied.

Because the third requirement, identity of the parties, is not in dispute,[7] the Court next considers whether the Company had a "full and fair opportunity" to litigate the question of Addendum Four's incorporation into the CBA in *Brent Electric I*. The public record demonstrates that the Company was permitted to dispute this issue—and did dispute it—both in *Brent Electric I* and the appeal that followed. *See id.* at *2, n.4; *Brent Electric Co., Inc.*, 110 F. 4th at 1204 n.3. The Company suggests that it was deprived of a meaningful opportunity to be heard because the district court relied on Rule 56(e) when making its decision. *See* Dkt. 58 at 2-4.[8] But the mere fact that the court's finding rested on procedural grounds does not preclude the application of estoppel. The requirement that a party "had a full and fair opportunity to be heard centers on the fundamental fairness of preventing the party from relitigating an issue he has lost in a prior proceeding," such as whether the party faced significant procedural limitations or lacked incentive to litigate an issue. *SIL-FLO, Inc.*, 917 F.2d at 1521. A party's failure to offer evidence in support of its position, despite having motive and opportunity to do so, is not tantamount to a deprivation of the opportunity to litigate. *See* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4442 (3d ed. 2024) (recognizing that it "may be proper to

---

[7] *See generally* Dkt. 58.

[8] It is not this Court's function to review the propriety of a different judge's application of the Federal Rules. Accordingly, this Court declines to address the Company's argument that the court misapplied Rule 56(e) when deciding *Brent Electric I*. Dkt. 58 at 2-4.

apply preclusion after a failure to offer any evidence on an issue"). *E.g.*, *In re Corey*, 583 F.3d at 1253 (concluding that the policies underlying preclusion were best served by preventing a litigant from contesting in a second case what he was not permitted to address in an earlier action due to his own misconduct).

The Court finds that the Company and the Union litigated the question of whether Addendum Four is incorporated in the CBA during *Brent Electric I*. The Company had a full and fair opportunity to litigate that issue before both the district court and the court of appeals, and the issue was conclusively resolved by a now-final decision on the merits. The doctrine of issue preclusion prevents re-litigation of that issue in these proceedings, and the parties are bound by the prior determination that Addendum Four is a component of, rather than separate from, the CBA.

The preclusive effect of *Brent Electric I* necessitates the dismissal of Count I. That count turns on the question of whether Addendum Four is part of the CBA[9]—a question conclusively resolved by *Brent Electric I*. The Court is bound to conclude that the CBA and Addendum Four make up a single agreement.[10] Because Addendum Four was part of the CBA, there is a strong presumption that disputes concerning that Addendum are subject to arbitration. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Phillips 66 Co.*, 143 F. Supp. 3d 1106, 1112 (N.D.

---

[9] *See* Dkt. 17 at ¶¶ 83-85 (asserting that the Arbitration Panel lacked authority to address the dispute concerning the payment of pension funds because Addendum Four—and the parties' dispute over the breach of that Addendum—"is a separate and distinct contract apart from the CBA" which was "not governed by any provision" of the CBA except for Section 1.02(c) and was "not governed by the grievance procedure contained within Section 1.05 through 1.10 of the CBA").

[10] The Company presents no arguments suggesting that, even if Addendum Four is part of the CBA, it is nevertheless excluded from the CBA's grievance procedures. *See* Dkt. 17 at ¶¶ 80-89 (arguing that the Arbitration Panel "did not have jurisdiction" to hear the grievance because Addendum Four was not part of the CBA and not governed by its grievance procedures); Dkt. 36 at 2; Dkt. 58.

Okla. 2015). This presumption is "difficult to overcome," and arbitration is the appropriate outcome "[u]nless there is an express provision in the collective bargaining agreement excluding a particular dispute from arbitration" or other forceful evidence that a claim should be excluded from arbitration. *Id.* Because there is no such provision in the CBA, the arbitration procedures set forth in the CBA govern the parties' dispute over Addendum Four, and the Company's request for an order vacating the arbitration award for lack of jurisdiction cannot proceed. The Company's claim that its obligations under Addendum Four were not subject to arbitration (Count I) must be dismissed.

## IV

Counts II, III, and V are not so easily disposed of. Each of these counts challenges, directly or indirectly, the arbitration panel's decision .[11] The Union argues that the panel has already heard and rejected the arguments raised in these counts, and the Court may not revisit the merits of the panel's decision. Dkt. 23 at 10. But the Company is not asking the Court to engage in appellate review of the merits of the arbitration panel's decision; the Company is alleging that the arbitration panel acted in manifest disregard of the law and issued a decision that fails to draw its essence from the parties' agreement. *See* Dkt. 17 at 19-20. This is precisely the type of review that a district court may engage in.

Judicial review of labor-arbitration awards is narrow—"among the narrowest known to the law." *Champion Boxed Beef v. Local No. 7*, 24 F.3d 86, 87 (10th Cir. 1994) (citation and quotation marks omitted). A reviewing court may not set aside an arbitrator's interpretation of a contract unless it appears

---

[11] Only Count III does so directly: Count II focuses primarily on whether the timeliness of a grievance is a question of procedural arbitrability, while Count V seeks a declaration that the Company is in full compliance with its contractual obligations and that it is not required to make any further contributions to the pension plan. *See United Steel*, 143 F. Supp. 3d at 1111 (treating the parties' dispute regarding both timeliness and waiver of the timeliness argument as questions of procedural arbitrability). But these claims do not carry water unless the Court also holds that the arbitration panel abused its authority when it decided the grievance was timely and issued its award.

that the arbitrator ignored the plain language of the agreement. *Id.* So long as the arbitrator is "arguably construing or applying the contract and acting within the scope of [its] authority," its decision will be upheld. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Although the standard of review applicable to Counts II, III, and V is narrow, some review is still required. If the Company's allegations are true, then the Court may—indeed must—take some action. But assessing the validity of the Company's allegations requires consideration of, among other things, the panel's decision, the documents the panel considered, and the underlying agreements. *E.g., Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1202 (10th Cir. 1999). It is, perhaps, for this reason that challenges to arbitration decisions are often resolved at the summary judgment stage, rather than in response to a motion to dismiss. *See, e.g., Loc. No. 7 United Food & Com. Workers Int'l Union v. King Soopers, Inc., a Div. & Subsidiary of Dillon Companies, Inc.*, 222 F.3d 1223 (10th Cir. 2000) (evaluating what arbitrator did, reviewed, and considered in deciding whether the award drew its essence from the collective bargaining agreement).[12]

In this case, the Court can only determine whether the arbitrator was "arguably construing" the parties' contract by referring to evidence pertaining to the panel's decision and the agreements themselves. *E.g., Air Methods Corp. v. OPEIU*, 737 F.3d 660, 665-66 (10th Cir. 2013). The Court will not engage in that type of substantive, fact-based review at the pleading stage. At this point in the proceedings, the only question the Court must answer is whether the Company would be entitled to relief if its factual allegations were taken as true. *Cf. Bell*, 348 F.3d at 1230. The Court concludes that the Company has alleged facts that, if true, would support a claim even under the admittedly narrow standard of review applicable in this case. *E.g.*, Dkt. 17 at ¶¶

---

[12] *See also, e.g., NCR Corp., E & M-Wichita v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 70*, 906 F.2d 1499 (10th Cir. 1990) (considering decision and process applied by arbitrator on appeal of summary judgment).

Case No. 21-cv-103

102-118 (alleging that the award is unsupported by the plain language of the parties' agreements). That is all the Company was required to do at this stage of the proceedings. Accordingly, the Union's motion to dismiss Counts II, III, and V is denied.

## V

For the reasons set forth above, the Union's motion to dismiss is granted as to Count I because the Company is precluded from obtaining the relief sought in that count. The remainder of the Union's motion is denied.

DATED this 16th day of April 2025.

JOHN D. RUSSELL
*United States District Judge*